# Third District Court of Appeal

## State of Florida

Opinion filed July 3, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-2213
Lower Tribunal No. 23-15321
_____

**S.M., the Mother,**
Appellant,

vs.

**Department of Children and Families, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Michelle Alvarez Barakat, Judge.

Eugene F. Zenobi, Criminal Conflict and Civil Regional Counsel, Third Region, and Kevin Coyle Colbert, Assistant Regional Counsel, for appellant.

Karla Perkins, for appellee Department of Children and Families; Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Laura J. Lee, Assistant Director of Appeals (Tallahassee), for appellee Statewide Guardian ad Litem Office.

Before LOGUE, C.J., and EMAS and LINDSEY, JJ.

LOGUE, C.J.

S.M., whose minor children were previously adjudicated dependent, appeals the trial court's order of disposition, which approved the conditions for return set forth in the Department of Children and Families' ongoing Family Functioning Assessment over the Mother's objections. We treat this appeal as a petition for writ of certiorari because the order appealed is neither a final order nor an appealable non-final order. See Fla. R. App. P. 9.040(c) ("If a party seeks an improper remedy, the cause must be treated as if the proper remedy had been sought . . . ."). Finding that the trial court's order does not depart from the essential requirements of the law, we deny the writ.

## BACKGROUND

On July 4, 2023, the Department filed a Dependency Shelter Petition requesting an order for shelter of the Mother's three minor children. At the time, the oldest of the children was a month away from turning five and the youngest was two months old. The Shelter Petition referenced three reports to the Department on June 22, 2023, June 23, 2023, and July 3, 2023, alleging inadequate supervision, substance misuse, and household violence.

The first two reports were made by the children's paternal grandfather and included, among other things, statements that the "[M]other does marijuana every day" and that the Mother "used to shoot up" unknown substances "in the past." The third report made on July 3, 2023, indicated

2

that the Mother left the three children, including the two-month old child, on the sidewalk in front of a hotel for an unknown period of time.

The Shelter Petition also alleged the family had a history with the Department dating back to 2018 and that both parents suffered from substance misuse. At the time the Shelter Petition was filed, the Mother's whereabouts were unknown.

The trial court found probable cause to shelter the minor children and rendered an order as to shelter on July 7, 2023. The Department thereafter filed a Verified Petition for Dependency on July 19, 2023. The Dependency Petition alleged the same facts contained in the Shelter Petition.

On November 1, 2023, the trial court held a hearing on the Dependency Petition and the Mother entered a consent plea. The plea language read into the record acknowledged that the Mother was in need of services for housing and to continue to address her mental health and her ability to care for her children, but did not specifically reference substance misuse or the need for services related thereto. Based on the hearing and the colloquy, the trial court entered an Order of Adjudication as to the minor children. The Order of Adjudication did not contain any specific findings relating to the Mother's substance misuse.

On November 14, 2023, the Department filed its "Family Functioning Assessment – Ongoing." In it, the Department referenced the initial reports made on June 22nd and June 23rd by the minor children's paternal grandfather, in which the grandfather reported to the Child Protective Investigator that "both parents do marijuana." The Family Functioning Assessment also noted the family's history with the Department going back to 2018, that the Mother was reported to have substance misuse issues that had not been dealt with, and that the Department had been unable to locate or speak with the Mother since the investigation started. The Child Protective Investigator was eventually advised by law enforcement that the Mother had been found and arrested on three counts of child neglect, and that the Mother "appeared to be drugged when she was found."

The Family Functioning Assessment indicated that an out-of-home safety plan was the only protective intervention possible at the time. In order for an in-home safety plan to be executed that would allow the minor children to return home, the Department set forth the following pertinent conditions for return: "Both the Mother and Father suffer from mental health issues and/or substance misuse; they have a history of domestic violence. In order for safety return to parents, the caregivers must . . . successfully complete mental health and substance misuse services . . . ."

4

On November 15, 2023, the trial court held a disposition hearing pursuant to Florida Rule of Juvenile Procedure 8.340 and section 39.521, Florida Statutes. At the hearing, the Department advised the trial court that a Family Functioning Assessment had been submitted for the court's approval. The Department also requested that the minor children be placed in foster care with the maternal grandmother, who was a licensed foster parent. The guardian ad litem advised she had no objection to the ongoing Family Functioning Assessment and the conditions for return set forth therein, or to the placement of the minor children with the maternal grandmother.

The Mother, however, objected to the Family Functioning Assessment's requirement that she successfully complete substance misuse services as a condition for return. The Mother argued substance misuse was not an issue in her consent plea and contended that if the Department had concerns regarding substance misuse it should have either been included in the consent plea or there should have been a trial on the issue.

The Department conceded substance misuse issues were not mentioned in the Mother's plea, but nevertheless argued that the Dependency Petition contained allegations that the Mother used marijuana and it was unknown what behaviors the Mother exhibited when on marijuana.

5

Because the Department had been unable to make contact with the Mother during the investigation and she was subsequently incarcerated at the time of the disposition hearing, the Department argued the Family Functioning Assessment included the requirement that the Mother successfully complete substance misuse services as a condition for return in order to determine whether her substance misuse impacted child safety or her ability to care for the children.

At the conclusion of the hearing, after considering the Mother's argument and the Department's response, the trial court approved the ongoing Family Functioning Assessment over the Mother's objection. In doing so, the trial court noted that concerns regarding substance misuse were reflected in the circumstances that brought the case to care and the surrounding situations. The trial court specified it was "[n]ot saying that [the Mother] has a substance abuse issue, but making sure that we offer her everything that we can." Finally, the trial court stated it would be addressing the issue further as part of the case plan and would ensure that it was "addressing tasks specifically for each parent." This appeal timely followed.

## JURISDICTION

Although this proceeding was filed as a direct appeal, it does not appear that this Court has appellate jurisdiction because review is sought of a non-final, non-appealable order.

"Generally, the test employed by the appellate court to determine finality of an order, judgment or decree is whether the order in question constitutes an end to the judicial labor in the cause, and nothing further remains to be done by the court to effectuate a termination of the cause as between the parties directly affected." S.L.T. Warehouse Co. v. Webb, 304 So. 2d 97, 99 (Fla. 1974). Here, the disposition order is a post-dependency order approving an ongoing Family Functioning Assessment which sets the conditions for the interlocutory return of the child to the parent. This is clearly a non-final order because judicial labor remains to be conducted below.

Nor is the order an appealable non-final order under Florida Rule of Appellate Procedure 9.130(a)(3). See M.M. v. Fla. Dep't of Child. & Fams., 189 So. 3d 134, 139–40 (Fla. 2016) ("Notably, rule 9.130(a)(3) does not list post-dependency orders as non-final orders reviewable by interlocutory appeal."). And while Florida Rule of Appellate Procedure 9.146(b) provides that in dependency cases "any parent . . . affected by an order of the lower tribunal . . . may appeal to the appropriate court[,]" the Florida Supreme Court

7

has stated that this rule does not expand the types of non-final orders that may be appealed beyond those listed in Rule 9.130. <u>In re Amends. to the Fla. Rules of Appellate Proc. (Out of Cycle)</u>, 941 So. 2d 352, 357 (Fla. 2006) (expressly approving holding in <u>D.K.B. v. Dep't of Child. & Fams.</u>, 890 So. 2d 1288 (Fla. 2d DCA 2005)); <u>see also</u> <u>C.B. v. Dep't of Child. & Fams.</u>, 975 So. 2d 1158, 1160 (Fla. 5th DCA 2008). Instead, the Florida Supreme Court in <u>M.M.</u> held that "a post-dependency order that is subject to future modification for purposes of child welfare and parental visitation is a non-final order reviewable by certiorari." 189 So. 3d at 141. Accordingly, we treat this appeal as a petition for writ of certiorari pursuant to Rule 9.040(c). <u>See B.D. v. Dep't of Child. & Fams.</u>, 3D24-0404, 2024 WL 1894928, at *2 (Fla. 3d DCA May 1, 2024).

## ANALYSIS

On appeal, the Mother contends the trial court deprived her of due process by "fail[ing] to entertain" her objection to the conditions for return set forth in the Department's ongoing Family Functioning Assessment, specifically the condition that she complete substance misuse services. She argues her consent plea to the petition for dependency did not relate to substance misuse and the Department failed to properly document said condition for return as required by section 39.521(2). As a result, the Mother

8

contends the trial court's acceptance of said condition for return, over her objection, "placed an unwarranted barrier to the Mother's path to reunification with her Minor Children."

Section 39.521(1) requires a trial court to conduct a disposition hearing after a parent has consented to a finding of dependency, as occurred here. A "disposition hearing" is defined as "a hearing in which the court determines the most appropriate protections, services, and placement for the child in dependency cases." § 39.01(24), Fla. Stat. In its written disposition order, the trial court is required to address the placement of the child and visitation, as well as the requirements necessary to protect the health, safety, and well-being of the child and to promote family preservation or reunification whenever possible. § 39.521(1)(e), Fla. Stat.

As part of the disposition hearing, the trial court is also required to review and approve the Department's Family Functioning Assessment.[1] § 39.521(1)(a), Fla. Stat. "The family functioning assessment must provide the

---

[1] Cf. Fla. Admin. Code R. 65C-30.001(47) ("'Family Assessment,' 'Family Functioning Assessment,' 'Ongoing Family Functioning Assessment,' and 'Progress Update' means a decision-making and documentation process conducted in response to a child abuse and/or neglect report or any other instances in which safety needs to be assessed throughout the life of an active investigation or ongoing services case to help evaluate danger threats, child vulnerability, parental protective capacities and to determine the safety response, case outcomes and goals.").

court with the following documented information: . . . (h) Identification of the conditions for return[2] which would allow the child to be placed safely back into the home with an in-home safety plan and any safety management services necessary to ensure the child's safety." § 39.521(2), Fla. Stat. When making this determination, the trial court may consider "[a]ny [ ] relevant and material evidence, including other written or oral reports," and may rely on evidence "to the extent of its probative value, <u>even though not competent in an adjudicatory hearing</u>." § 39.521(2), Fla. Stat. (emphasis added). This can, therefore, include hearsay. <u>Cf.</u> <u>R.R. v. Dep't of Child. & Fams.</u>, 338 So. 3d 1026, 1029 (Fla. 3d DCA 2022); <u>R.C. v. Dep't of Child. & Fams.</u>, 917 So. 2d 241, 242 (Fla. 5th DCA 2005).

Here, a review of the record reflects that the trial court properly complied with the foregoing statutory requirements in its disposition hearing and written disposition order. In exercising its discretion and accepting the conditions for return set forth in the Department's ongoing Family Functioning Assessment, the trial court considered all relevant and material evidence before it, including the reports made by the paternal grandfather,

---

[2] <u>Cf.</u> Fla. Admin. Code R. 65C-30.001(32) ("'Conditions for Return' means the specific family conditions or behaviors that must exist or be in place in order to meet the criteria for the child to be returned home safely.").

10

the Child Protective Investigator, and law enforcement regarding the Mother's substance misuse issues.

While the Mother is correct that her consent plea at the adjudicatory hearing and the resulting order of adjudication of dependency did not reference the Mother's substance misuse issues, this does not mean that the trial court was required to ignore the reports made by the paternal grandfather to the Child Protective Investigator, contained in both the Shelter Petition and the Dependency Petition, that the "mother does marijuana every day" and that the Mother "used to shoot up" unknown substances "in the past." Nor was the trial court required to ignore the reports from the Child Protective Investigator contained in the ongoing Family Functioning Assessment stating law enforcement advised that the Mother "appeared to be drugged when she was found" and arrested on child neglect charges. See § 39.521(2), Fla. Stat. (providing that "any other relevant and material evidence, including other written or oral reports, may be received by the court in its effort to determine the action to be taken with regard to the child and may be relied upon to the extent of its probative value, even though not competent in an adjudicatory hearing").

The Mother's contention that the trial court deprived her of due process by "fail[ing] to entertain" her objection to the conditions for return is without

11

merit. The record reflects the Mother was provided an opportunity to be heard on her objection and the trial court gave ample consideration to the Mother's objection. While the Mother may disagree with the trial court's ultimate ruling, this is not a due process violation.

Accordingly, because the trial court properly exercised its discretion to approve the Family Functioning Assessment with the condition for return that the Mother complete substance misuse services and did not depart from the essential requirements of the law, we deny the petition.

Petition denied.